of the alleged prior invention by one Stryker, does not appear to me to have any serious basis. The story which he tells of Deuchfield's application to him, at a grocery store, on a Sunday evening, February 1st, 1857, to contrive some way of keeping the mill (the Uhlhorn) dry, that, after a brief conversation, Deuchfield employed him to come on the next day, to begin the work, and that, on the Monday morning, he went to the mill and made the drawing which he produces, dated and signed by him on that day, as he testifies, and then proceeded with the work, having, as his guide, this working drawing, which represents the mill as having five run of stones, while, upon the overwhelming proof, it never had but four, makes a story incredible enough, upon the face of it, to be disbelieved. But, it is shown to be necessarily untrue, by the evidence of several persons with whom Deuchfield had previously conversed respecting a plan which he had devised for drying the meal and thus freeing the mill from the injurious effect of moisture, and, also, by his consultation with the owners of the mill, and the final consent on their part that he might proceed to put in the contrivance which he had devised, as he proceeded to do on the 2d of February, 1857, employing Stryker for the purpose. It is true, that Deuchfield was not called as a witness, but the proof shows that he was a man broken in health and aged at the time of the examination, and, as there was other independent proof upon the point, satisfactory in character, the omission is not material. It only calls for close scrutiny of the question.

The other questions of anticipation rest upon oral proof, either of the time when certain contrivances were introduced into particular mills, or of the substantial identity of such devices with that covered by Deuchfield's invention.

I am satisfied, upon the most careful examination which I am capable of, that, in each case, the weight of the oral evidence is with the patentee, and that, without the presumption arising from the patent, I should be constrained to hold, upon these questions, with the plaintiffs. But, I can with difficulty understand how it can be supposed, that, in any of the cases of alleged anticipation, the proof for the defence can be taken to go beyond a case of doubt; and, in such a case, the presumption arising from the patent must stand. To discuss these several questions in detail can be of no public service, and I have not the time to devote to it.

The infringements by the defendants are clearly made out by the testimony on the part of the defendants, as well as by that of Bignall on the part of the plaintiffs. In each case, the first claim of the reissued patent is infringed by devices, in all material respects, like those contained in the reissue, and embracing all the elements of that combination. That the defendants have added something to the devices combined by the patentee does not enable them to use his combination without being answerable.

A decree in favor of the plaintiffs must be made in the usual form, restraining further infringement, establishing the reissue, and directing a reference to a master to take an account and ascertain the profits made by the defendants, and the damages suffered by the plaintiff, by reason of such infringements. Either party has leave to apply for further directions, and, upon the coming in and confirmation of the master's report, for a final decree.

[See Case No. 6,422, and note.

[For another case involving this patent, see Bignall v. Harvey, 4 Fed. 334.]

## Case No. 6,425.

### In re HERRMAN et al.

[4 Ben. 126;[1] 3 N. B. R. 649 (Quarto, 161).]

District Court, S. D. New York. April, 1870.

#### PROOF OF DEBT—POSTPONED CLAIM.

A proof of a claim, which has been postponed by the register until after the election of an assignee, is then to be treated as if it had not been tendered before the election of the assignee.

In this case [in the matter of Adolph B. Herrman and Herman Herrman], the register, at the first meeting of creditors, postponed certain claims till after the election of the assignee. After the election the proofs were again presented. The question arose how such proofs should be treated, and the register certified it to the court.

[By I. T. WILLIAMS, Register: I, the undersigned, one of the registers of this honorable court, do respectfully certify and report that, at the first meeting of creditors, I postponed the claims of Isidor Rosenthal and others until the assignee should be elected. After the election of assignee, the said Rosenthal, by his counsel, Mr. Mackie, again presents his proofs. The question is, what is then the proper practice? Mr. Seixas, who objected to the proving of the claims before the election of the assignee, suggests that the proofs must now be received by the register as if now for the first time offered, and thereupon, in the usual course, handed over to the assignee to share the same future as all other proofs, unless the assignee or some creditors should petition the court to strike out such proof, or reject the claims. If such application be so made, the court will refer it to the register to take proof, and on the coming on of the proof will decide upon the validity of the claims. But if no such action is taken on the part of the assignee or creditors, the party will be entitled to share in the dividend. Mr. Mackie, on the other hand, suggests the apprehension that the claim having been so far the subject

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

of adjudication, that it is postponed under a quasi direction to the assignee to investigate the same, may require affirmative action on his part, to place the claim upon the footing of claims not so objected to and postponed. It would seem that under section 22 [of the act of 1867 (14 Stat. 527)], the burden of proof in opposition to a claim, proved in the usual form, is with the party, assignee or creditor, objecting to it. Yet, when a claim is postponed from the expressed opinion of the register that it ought to be investigated by the assignee, I am not sure that this does not change the burden of proof, and make it the duty of the creditor whose claim is so postponed to take proof before the register, on notice to the assignee and objecting creditors, making a prima facie case at least, of the justness of his claim; thus holding the affirmative in case the assignee desires to proceed and give evidence in opposition to it. If, upon the testimony so taken, there be an opposing interest, the register must certify to the court for decision. If not, he may deem the proof satisfactory, if indeed it be satisfactory, and order distribution accordingly.] [2]

BLATCHFORD, District Judge. The proof of claim, when now tendered, is to be treated, in all respects, as if it had not been tendered before the election of assignee and postponed.

[See Case No. 6,426.]

---

## Case No. 6,426.

### In re HERRMAN et al.

[3 N. B. R. 618 (Quarto, 153).] [1]

District Court, S. D. New York. March 18, 1870.

BANKRUPTCY—PROOF OF DEBT—CHOICE OF ASSIGNEE—POWER OF REGISTER.

Where counsel, representing certain creditors, objected to the votes of other creditors being received for choice of assignee, on the ground that one had accepted a preference, and the claims of others had been purchased with the bankrupt's money, opposing counsel offered contrary proof which the register declined to hear, an injunction order having been produced by first counsel. *Held,* that the register was right. The register has power to postpone proof of a claim until an assignee is chosen, if a case is made out for such postponement within rule 6 of this court; but he has no power to institute or set on foot the inquiry provided for by the last clause of section 22 of the act [of 1867 (14 Stat. 527)].

[Cited in Re Bininger, Case No. 1,421.]

[In bankruptcy. In the matter of Adolph B. Herrman and Herman Herrman.]

By I. T. WILLIAMS, Register.

I, the undersigned, one of the registers of this honorable court, do respectfully certify that, upon the first meeting of creditors, I

---

[2] [From 3 N. B. R. 649 (Quarto, 161).]
[1] [Reprinted by permission.]

proceeded to take the votes of all the creditors, reserving, by consent of the meeting, all objections until the close of the voting, and also the right to strike out the votes of those whose proofs should be postponed. The vote stood twelve votes, representing seventy-three thousand two hundred and five dollars and nine cents, for William H. Rooney, and seventeen votes, representing fourteen thousand two hundred and twenty-five dollars and sixty-three cents, for David W. Evans. Mr. Seixas, of counsel for certain creditors, then proceeded, pursuant to the understanding aforesaid, to object to the vote of Solomon Reich, and read an affidavit tending to show that said Reich had accepted a preference contrary to the act. After hearing Mr. Mackie, of counsel for certain other creditors, in opposition thereto, I came to the conclusion that there was reasonable doubt of the right of said Reich to prove his claim, and was of the opinion that such right ought to be investigated by the assignee, and pursuant to the understanding aforesaid, struck out said vote. Mr. Seixas then proceeded to object to the vote of Isidore Rosenthal, Simon Fox, Rawitzer Brothers, Adolph Rawitzer, and Edward Nathan, and read several affidavits, letters, papers, and documents, to show that the claims of the said creditors had been purchased with money belonging to the bankrupts, and in collusion with them, in fraud of the bankrupt act. Pending the examination of the case, the hour of adjournment having arrived, the meeting was adjourned to Wednesday, the 9th instant. At the appointed time the meeting proceeded, when Mr. Seixas produced a certified copy of an order, and an injunction founded thereon; whereupon Mr. Mackie stated that he had affidavits of the several creditors whose votes were objected to by Mr. Seixas, and others which he had intended to read in opposition to the objection to the proving of their claims. He also produced Edward Nathan, one of said creditors, and offered him for oral examination. I declined to hear them or permit them to be read or given, holding that the question was disposed of by the order and injunction above referred to. Mr. Mackie then proceeded (pursuant to the understanding under which the vote was taken) to object to the votes of Jacob Foss, Alexander Ross, Felix McCabe, Owen Ward, Ingersoll & Dougherty, William Kelly, the Cleveland Paper Company, Murphy & Son, M. Urspring, John W. Winegar, John Beaman & Co., and Jessup & Moore, stating the grounds on which such objections were founded, and offering proof to support the same. I declined to hear said objections, or the proof supporting them, holding that the court had, in the making of the order and granting the injunction aforesaid, indicated a different practice—to wit: the practice of presenting such objections by petition to the court, and obtaining an order and injunction restraining such creditors from voting. Where-